**Re Frank Fools CROW, Arvol Looking Horse, Pete Catches, Grover Horned Antelope, Larry Red Shirt, Selo Black Crow and Francine Nelson, For Themselves and On Behalf of the Lakota Nation and Persons Practicing the Lakota Religion, and Bill Red Hat, Jr., Terry Wilson, Laird Cometsevah, Walter Hamilton, the Southern Cheyenne Research and Human Development Association, Inc., For Themselves and On Behalf of the Tsistsistas Nation and Persons Practicing the Tsistsistas Religion**

v.

**Tony GULLET, In His Official Capacity as Park Manager of Bear Butte State Park; The South Dakota State Game, Fish and Parks; and the State of South Dakota.**

No. CIV 82–5047.

United States District Court, D. South Dakota.

June 25, 1982.

Mario Gonzalez, Pine Ridge, S. D., for plaintiffs.

Mark V. Meierhenry, Atty. Gen., State of S. D., Pierre, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, Chief Judge.

Bear Butte is a geological formation which stands at the eastern edge of the Black Hills. The Butte has immense cultural and historical importance to this area. Bear Butte was purchased by the State of South Dakota in 1962, and was designated by the South Dakota Legislature as a State Park. SDCL 41–17–1(1). The Legislature delegated the power to manage and improve state parks for the benefit of the general public to the defendant Department of Game, Fish and Parks. The defendant Tony Gullet is the Department's manager at Bear Butte State Park.

The plaintiffs in this action include traditional chiefs and spiritual leaders of the Lakota Nation and the Tsistsistas Nation.[1] The plaintiffs contend that Bear Butte is the most powerful ceremonial site for the religious practices of the Lakota and Tsistsistas people. In this action the plaintiffs challenge the constitutionality of the defendants' conduct at Bear Butte. Specifically, plaintiffs object to projects, some of

---

1. Plaintiffs requested this Court to certify this proceeding as a class action. The class to be represented would be the Lakota Nation, persons practicing the Lakota religion, the Tsistsistas Nation, and persons practicing the Tsistsistas religion. It appears that class actions seeking protection of constitutional rights are particularly appropriate under Rule 23(b)(2). This Court further finds: (1) that an adjudication with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not par-ties to the adjudication; and (2) that defendants have acted on grounds generally applicable to the class. *See, Petersen v. Talisman Sugar Corp.,* 478 F.2d 73 (5th Cir. 1973); Wright and Miller, *Federal Practice and Procedure,* Civil §§ 1775–76. Therefore, final injunctive or declaratory relief is appropriate with respect to the class as a whole. Accordingly, this Court has certified this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

which began in April, 1982, by which defendants constructed roads, bridges, parking lots, and other access facilities at Bear Butte. Plaintiffs also object to alleged attempts by defendants to restrict or regulate the access of plaintiffs to Bear Butte for worship and ceremonial purposes.

Accordingly, plaintiffs brought this action for declaratory and injunctive relief, and for damages. They contend that defendants' actions both restricting and regulating access to the Butte for religious purposes violates the Free Exercise Clause of the first amendment, the American Indian Religious Freedom Act, 42 U.S.C. § 1996, Article 18 of the Universal Declaration of Human Rights, and Article 18 of the International Covenant on Civil and Political Rights. Plaintiffs assert that these provisions also establish the right of the Lakota and Tsistsistas people to the "continued natural topographic unity and isolation of Bear Butte. . . ." On this basis plaintiffs oppose the constructive projects.

Plaintiffs request this Court to declare plaintiffs' right to full, unrestricted and uninterrupted religious use of the Butte. Additionally, plaintiffs seek an injunction precluding defendants from restricting or regulating plaintiffs' access to and use of Bear Butte for religious purposes. Plaintiffs seek an injunction not only to enjoin construction projects or any other alteration of the natural features of the Butte, but they also request this Court to order defendants to remove any roads, parking lots and buildings currently in place at the park. Finally, plaintiffs seek over one million dollars in damages for the alleged deprivation of their civil rights. 42 U.S.C. § 1983. This Court has jurisdiction of the controversy pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4).

On June 18, 1982, this Court heard the evidence on a motion for a preliminary injunction. After the hearing, the parties agreed that the evidentiary hearing on the motion could be consolidated with the trial on the merits. The merits of this case are before this Court on the parties' cross-motions for summary judgment.

The plaintiffs presented several witnesses in addition to numerous affidavits. Plaintiffs' witnesses included two Lakota medicine men. They stated that Bear Butte was the site where the Lakota originally met with the Great Spirit. It was the place of instruction and remains today the most significant site of Lakota religious ceremonies. To the Tsistsistas, Bear Butte likewise is the site of pilgrimages, where worshipers go to receive the powers and benefits of the Great Spirit. Additionally, Lakota worshipers conduct the Vision Quest at Bear Butte. The Quest is one of the seven sacred ceremonies of the Lakota people. During the Quest, the vision seeker and all his family and companions must be purified by means of the "sweat lodge" ceremony. The worshipers fast during this time. The vision seeker climbs to a solitary place on the Butte where he prays aloud and sings. The vision seeker may leave sacred gifts on the Butte for the Great Spirit. During the Vision Quest, which may last up to four days, the companions wait below the Butte, and sing honorary songs and pray.

In this action, plaintiffs contend that the conduct of the defendants and the general public at Bear Butte destroys the sanctity and power of the religious ceremonies and violates their right to exercise freely their religious beliefs. Specifically, defendants have allegedly desecrated the ceremonial area at the foot of the Butte through the construction of access roads and parking lots. Defendants also constructed wooden viewing platforms on the Butte. It is also alleged that defendants disrupt ceremonies and interfere with the worshipers by permitting tourists to camp at the Butte and hike to the top of the mountain. Plaintiffs' witnesses stated that tourists violate the sanctity of the ceremonies by taking photographs, carrying food and water on the Butte, taking the worshiper's offerings from the Butte, and bothering prayers and singers. Plaintiffs alleged that defendants violate their constitutional rights by *allowing* tourists to behave as set forth above. Finally, plaintiffs allege that defendants denied the worshipers access to roots and

plants necessary for Vision Quest ceremonies at the Butte.

The defendants agreed that Bear Butte is a traditional, significant religious site for the Lakota and Tsistsistas people. In fact, defendants maintain the park, in part, to serve and assist Indian worshipers. The State also manages Bear Butte State Park for the benefit of the general public. The park has educational facilities through which the public can discover the importance of the Butte to the original development of the Black Hills, as well as the geological and Indian religious values of the Butte.

This most recent dispute apparently arose when the defendants began several construction projects at the park. *See*, Exhibit 3. Most important of these projects was an access road and parking lot adjacent to the area southeast of the Butte traditionally used by Indians as a ceremonial ground and campsite. The State maintains this campsite for the exclusive use of ceremonial campers. The general public is not authorized to drive to or camp in this area. Defendants found, however, that the vehicles of the ceremonial campers became mired in the mud near the campsite; the makeshift road also provided poor access to the campsite. As a result of vehicle traffic through the open fields, vegetation was destroyed and erosion occurred. For this reason defendants sought and received authorization to build the road and parking lot at the ceremonial grounds. Although plaintiffs' witnesses abhored the desecration represented by the construction, defendants contend many worshipers in the past urged the State to provide better and safer access to the site. The parking lot does not occupy the area utilized for ceremonies. It would occupy the same area used by worshipers to park their automobiles in the past. At this ceremonial area the defendants also provide services such as outdoor bathroom facilities, garbage disposal, and free firewood. The plaintiffs apparently do not object to these activities of the defendants.

Tony Gullet also testified that worshiper/campers may now obtain a ten-day camping permit. Defendants enforce a five-day stay limit at the non-religious campsites at Bear Butte State Park. There was no testimony that any Lakota or Tsistsistas ceremony lasted beyond ten days. Additionally, Gullet testified that park employees are instructed to urge tourists and hikers not to interfere with the Indian worshipers at the Butte. Although plaintiffs object to the construction of platforms on the Butte, Gullet testified that the platforms were built as a means of minimizing the contacts of tourists with worshipers. Tourists are told by defendants not to stray from established hiking trails or from the viewing platforms. Violators are arrested and issued citations. Gullet testified that there are places on the Butte to which worshipers may go out of the sight of the general public. Although worshipers may still hear other hikers and campers, Gullet testified that many of the sources of noise at the Butte are outside defendants' control. Gullet also testified that defendants permit hiking on the Butte by the general public only between the hours of eight o'clock, A.M., to eight o'clock, P.M. Indian religious campers are free to stay on the Butte overnight and may freely hike and camp without regard to the time regulation.

Other construction at the park includes relocating a shop building, constructing a new access road to the shop's new location, and the repairing and resurfacing of the main road into the park. SDCL 41–2–24 and 41–17–4 provide general authority to the Department to construct these improvements in the park. Defendants contend that the construction projects were necessary to improve both the recreational use of the park by the general public and the traditional religious use by Native Americans.

The record does not disclose a single instance in which defendants denied any plaintiff access to Bear Butte for the purpose of conducting ceremonies or worship. Defendants enforced a single restriction during the period of construction on the road and parking lot at the traditional ceremonial ground: during this time period de-

fendants permitted no camping overnight at the ceremonial ground. Daytime use of the ceremonial ground was permitted and camping overnight was restricted to a campsite in the park at Bear Butte Lake. Although defendants initially may have attempted to charge the usual camping fee for use of the lake campsite, Gullet testified that the fee requirement was waived and Native American campers were permitted to stay at the Lake free of charge during the construction period.

Defendants' witnesses testified that it is the policy of the Department to accommodate and not to infringe upon the traditional Indian uses of Bear Butte. Defendants assert that they have never in the past, nor will they in the future, deny Indian worshipers access to the Butte. Instead, defendants contend that they have sought to minimize the conflict of competing recreational and religious uses of the Butte through the creation of distinct "activity sites."

Although plaintiffs object to the requirement of registration upon entry to the park, defendants contend that registration provides essential control over traffic. The registration list shows when persons enter and leave the park. In the case of an emergency, if a visitor must be reached, defendants can quickly determine if the visitor is still in the park. Plaintiffs also object to the requirement of camping permits.

## I.

■ The first amendment to the Constitution provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof...." In *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Supreme Court held that the free exercise clause was applicable to the states through the fourteenth amendment. The free exercise clause proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation. *Braunfeld v. Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961). In this

case, there is no dispute that plaintiffs' practices at Bear Butte are based upon a system of belief that is religious and is sincerely held by plaintiffs. *Wisconsin v. Yoder*, 406 U.S. 205, 215–16, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972). This Court, therefore, must determine whether the conduct of defendants violates the right of plaintiffs to the free exercise of their religion.

■ The Supreme Court utilizes a two-part balancing test for determining whether a particular governmental action unduly burdens an individual's free exercise of religion. First, a court must decide whether the conduct, regulation, or law at issue burdens the free exercise of religion. Second, the restriction on the free exercise of religion must be balanced against the importance of the state's interest in the regulation or restriction. *See, Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). Even if the state's interest weighs heavier in this balance the regulation or restriction will be invalid if the state's interest can be achieved by less restrictive alternative means. *Id.*

■ On the plaintiffs' side, "it is necessary in a free exercise case to show the coercive effect of the [restriction] as it operates against the practice of their religion." *School Dist. of Abington v. Schempp*, 374 U.S. 203, 223, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844 (1963). In the past, courts found this "coercive effect" when government dictates compelled citizens to violate the tenets of their religion; *see, Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), or when government action made receipt of a public benefit or right conditional upon renunciation of a religious practice. *See, Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Thus, plaintiffs must establish that they are being injured or penalized by their adherence to the tenets of their religion, or that their conduct in the course of exercising their beliefs has been unduly re-

stricted. *Life Science Church v. Internal Revenue Service*, 525 F.Supp. 399 (N.D.Cal. 1981).

In this case plaintiffs contend that the free exercise of their religion has been burdened by the conduct of defendants in several respects: (1) defendants diminish the spiritual value of the Butte by constructing roads, parking lots, buildings, and platforms on or near the Butte; (2) defendants restricted plaintiffs use of the traditional ceremonial area during the period of construction; (3) defendants allow tourists at Bear Butte to disrupt religious practices in numerous ways; and (4) defendants restricted the religious practices of plaintiffs at Bear Butte Lake, where they were required to camp during the period of construction.

## CONSTRUCTION

The nature and purposes of the construction in progress in the park were previously set forth in this opinion. Plaintiffs contend that the alteration of the natural features of Bear Butte constitutes a violation of their religious beliefs. The construction diminishes the power of the Butte as a ceremonial ground.

It is clear to this Court that plaintiffs have no property interest in Bear Butte or in the State Park. For many years the State has administered this area as a state park. During this time it appears that plaintiffs' religious practices managed to coexist with the diverse developments that occurred there. Over this period the defendants carried out various building and construction projects at the park, pursuant to the authority given them by SDCL 41–17–4. Most recently, defendants began constructing an access road and parking lot at the traditional ceremonial ground. Although the named plaintiffs object to the construction, defendant Gullet testified that over the past three years numerous Indian religious campers requested that the State provide safer and better access to the ceremonial grounds. Although plaintiffs object to the platforms on the Butte, Gullet testified that the Department erected the platforms as a means of restricting tourist traffic on the Butte and to provide greater privacy to vision seekers and fasters elsewhere on the Butte.

In *Hopi Indian Tribe v. Block*, 8 ILR 3073 (No. 81–0481, D.O.C., June 15, 1981), the Hopi Tribe sought to enjoin development of the Arizona Snow Bowl, a recreational facility in the San Francisco Peaks and the Coconino National Forest. The Hopi Tribe also claimed that the free exercise of their religion required that the mountains remain free of manmade disturbances. The response of the court in *Hopi Indian Tribe* is significant:

> [Plaintiffs] are essentially claiming that anyone asserting a religious interest in government property ... has a constitutional right to demand that the government grant them access to it, yet restrict the rights of the public to, and any development of, this property in order to facilitate the exercise of religious beliefs. This Court will not extend the First Amendment to such limits. Not only is there an insufficient showing of a burden on plaintiff's Free Exercise rights, but such a result would clearly fly in the face of the principles of the Establishment Clause of the First Amendment. *Id.*, at 3075.

This Court likewise concludes that plaintiffs failed to show that the construction projects now in progress, as well as the past development in the park, have burdened any rights protected by the free exercise clause. Plaintiffs failed to establish that particular religious practices were damaged by the construction, or that the free exercise clause obligated defendants to waive their statutory power to manage and develop the state park in the public interest. Instead, we conclude that the free exercise clause places a duty upon a state to keep from prohibiting religious acts, not to provide the means or the environment for carrying them out. *Clark v. Wolff*, 347 F.Supp. 887 (D.Neb.1972), *aff'd*, 468 F.2d 252 (8th Cir. 1972).

## TOURISTS

This Court also rejects plaintiffs' claim that the free exercise clause obligates

defendants to control the actions of the general public at the Butte which may interfere with plaintiffs' religious practices. Specifically, plaintiffs contend that defendants should not permit tourists to photograph vision seekers, ceremonies, or religious objects; bring water and food on the Butte during a vision quest; operate car horns, motorcycles, radios, etc., during a vision quest; take religious offerings off the Butte; permit non-Indian women having their menstrual period to go on the Butte during a vision quest. The first amendment does not require defendants to police the actions of tourists, even though defendants voluntarily urge tourists to respect the religious practices of plaintiffs at the Butte. In *Badoni v. Higginson*, 638 F.2d 172, 179 (10th Cir. 1980), *cert. denied*, 452 U.S. 954, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981), the court rejected a similar claim. The court stated:

> The First Amendment protects one against action by the government, though even then, not in all circumstances; but it gives no one the right to insist that in the pursuit of their own interests others must conform their conduct to his own religious necessities.... We must accommodate our idiosyncracies, religious as well as secular, to the compromises necessary in communal life. [Cites omitted.] Were it otherwise, the Monument would become a government-managed religious shrine.

In this context, it is significant that plaintiff Grover Horned Antelope testified that he successfully completed his Vision Quest last year, in spite of distractions by tourists. This Court concludes, therefore, that defendants have not burdened the exercise of plaintiffs' religion by "allowing" tourists to act on occasion in a manner which does not conform to the dictates of plaintiffs' religion.

## CEREMONIAL AREA

■ During the period of construction on the access road and parking lot, defendants closed *for overnight camping* the area traditionally used by plaintiffs for religious ceremonies. Defendant Gullet testified that the Department originally contemplated closing the area for all uses. See, Exhibit 1. Defendants have permitted daytime use of the area, however, and worshipers continue to use the area for sweat lodge ceremonies and fasting. Although plaintiffs have concluded that their right of access was unduly restricted, the record fails to show that a single person was ever denied access to Bear Butte for religious purposes. Defendants closed the ceremonial area temporarily and partially, in the interests of protecting the safety of the public and assuring the most expedient completion of construction. Obviously, work on the access road and parking lot would be frustrated if the vehicles of park visitors were allowed to interfere with heavy construction machinery. The greater delay in construction only increases the danger of erosion and washouts—the same dangers which suggested the need for permanent roads in the first place.

In both *Badoni v. Higginson* and *Sequoyah v. Tennessee Valley Authority*, 620 F.2d 1159 (6th Cir. 1980), the courts held that Native Americans' right to free exercise of religion was not unduly burdened even though their access to sacred ceremonial sites was completely barred by the permanent flooding of the sites for dam and reservoir projects. In the present case, any right of access possessed by plaintiffs is restricted only partially and temporarily. Plaintiffs failed to establish that overnight camping at the ceremonial area is an indispensible part of their religious practices. Conversely, defendants met their burden of demonstrating that the State has a compelling interest in completing the construction projects, both for environmental and administrative reasons. Excluding the public and religious users from the ceremonial area, for a limited time, is the least restrictive means of completing the project expeditiously and with minimum danger to the public and the environment. Accordingly, this Court has utilized the two-part balancing test, and concludes that the free exercise rights of plaintiffs were not infringed upon by the restrictions placed upon access to the ceremonial area.

BEAR BUTTE LAKE

 During the period of construction, plaintiffs were required to camp overnight at the campsite at Bear Butte Lake. Park regulations precluded plaintiffs from building sweat lodges at the Lake campground. But Gullet testified that during this same period plaintiffs could build their sweat lodges at the traditional ceremonial area. It is clear that defendants did not discriminate against plaintiffs *because* of their religion. The prohibition against sweat lodges at the Lake was based upon a camping regulation generally applicable to all visitors to the park. Additionally, plaintiffs were only minimally restricted with respect to the time and place of conducting the sweat lodge ceremony. Admittedly, the Free Exercise Clause is an absolute prohibition on any infringement of the freedom to believe. However, conduct undertaken because of religious beliefs is not absolutely protected, and may be regulated or prohibited by government if there is an important or compelling state interest. *Bridges v. Davis,* 443 F.2d 970 (9th Cir. 1971), *cert. denied,* 405 U.S. 919, 92 S.Ct. 945, 30 L.Ed.2d 789 (1971). With respect to ceremonial restrictions at Bear Butte Lake, this Court holds plaintiffs failed to establish that defendants impermissibly burdened the practice of their religion.

 Finally, this Court further concludes that plaintiffs' right of free exercise of religion is not infringed when they are required to register at the park Visitor Center and acquire camping permits. The courts hold permit requirements unconstitutional only when they have been used to restrain first amendment rights without narrow, objective standards. *Shuttlesworth v. Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Badoni v. Higginson,* 638 F.2d at 180. Plaintiffs did not allege that the permit requirements restricted plaintiffs' access to the Butte or to ceremonial sites. Nor did they allege that any such permit was requested and denied. Plaintiffs simply object to the requirement of permits and registration at a place so deeply rooted in their religious tradition.

By requiring permits and registration, however, defendants have not burdened plaintiffs' religious exercises in the area of Bear Butte. The requirements do not require plaintiffs to violate any tenet of their religion, but serve valid state interests in controlling traffic at the park and in providing the means to contact visitors in case of an emergency.

## II.

Plaintiffs also brought this equitable action under the American Indian Religious Freedom Act, 42 U.S.C. § 1996, Article 18 of the Universal Declaration of Human Rights, and the Article 18 of the International Covenant on Civil and Political Rights. Plaintiffs seek substantial damages for violation of their civil rights. 42 U.S.C. § 1983. The American Indian Religious Freedom Act provides, *inter alia,* that "it shall be the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe ... and exercise [their] traditional religions, including, but not limited to access to sites, use and possession of sacred objects, and the freedom to worship...." In *Hopi Indian Tribe v. Block,* 8 ILR at 3076, the court correctly analyzed the legislative history and purpose of the Act.

 First, it is not clear that the Act governs the conduct of state governments or agencies. It applies expressly only to the federal government, Second, the Act does not create a cause of action in federal courts for violation of rights of religious freedom. The Act is merely a statement of the policy of the federal government with respect to traditional Indian religious practices.

The Act was meant to insure that American Indians were given the protection that they are guaranteed under the First Amendment; it was not meant to in any way grant them rights in excess of those guarantees.... The Act does not require that access to all publicly owned properties be provided to the Indians without consideration for other uses or activities, nor does it require that native

traditional religious considerations always prevail to the exclusion of all else. *Id.*; *see also*, H.Rep. 1308, 95th Cong., 2nd Sess. (1978), U.S.Code Cong. & Admin. News 1978, p. 1262.

This Court has concluded that with respect to the free exercise rights of plaintiffs, the conduct of defendants complied with the dictates of the first amendment. The American Indian Religious Freedom Act requires no more. This Court likewise fails to find any authority that indicates a legally cognizable right or cause of action is created by either Article 18 of the Universal Declaration of Human Rights or Article 18 of the International Covenant on Civil and Political Rights. Plaintiffs cited no authority to support the claim that these enactments or declarations create legal rights in addition to those recognized by the first amendment. Accordingly, this Court concludes that plaintiffs' claims under the Declaration and the Covenant are equally without merit.

In summary, this Court concludes that plaintiffs failed to establish any infringement of a constitutionally cognizable first amendment right. To the extent their right of access was temporarily restricted at the ceremonial grounds, this Court concludes that the plaintiffs' interests are outweighed by compelling state interests in preserving the environment and the resource from further decay and erosion, in protecting the health, safety, and welfare of park visitors, and in improving public access to this unique geological and historical landmark.

It is worth noting, finally, that some courts have expressed great concern that special treatment such as that afforded religious users of the park may constitute a violation of the Establishment Clause. At Bear Butte State Park, religious campers have a special camping area, from which the general public is excluded. Religious campers may acquire a permit to stay in the park up to ten days. The general public is limited to five days. Religious campers were permitted to camp free of charge at Bear Butte Lake. The general public must pay a fee to camp there. At the Butte itself, the Department has limited public access to established trails and platforms. Indian religious users may freely roam the Butte. Finally, the general public can hike the Butte only during a twelve-hour period of the day. Religious campers can stay on the Butte without regard to these time restrictions. Thus, defendants have gone far to afford special treatment and special privileges to American Indian religious practices at the Butte. Defendants justify their policies because the Indian religious tradition helps define the value and importance of Bear Butte to this region. In so doing, however, the government risks being haled into court by others who claim that the same rights of the general public are being unduly burdened, or that state government has become "excessively entangled" with religion, in violation of the Establishment Clause. *See, e.g., Widmar v. Vincent,* —— U.S. ——, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981).

For the foregoing reasons, this Court grants defendants' motion for summary judgment on all claims stated in plaintiffs' Complaint. Plaintiffs' prayer for declaratory and injunctive relief is denied. Having failed to establish a deprivation of their constitutional rights, plaintiffs' claim for damages under 42 U.S.C. § 1983 is also denied. This Court will issue an order lifting the injunction previously entered with respect to construction at the ceremonial grounds.

The foregoing constitutes this Court's findings of fact and conclusions of law.