**NORTHWEST INDIAN CEMETERY PROTECTIVE ASSOCIATION, et al., Plaintiffs-Appellees,**

**v.**

**R. Max PETERSON, Chief, U.S. Forest Service, et al., Defendants-Appellants.**

**STATE OF CALIFORNIA, Plaintiff-Appellee,**

**v.**

**John R. BLOCK, Secretary, U.S. Department of Agriculture, et al., Defendants-Appellants.**

No. 83–2225.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 1984.

Decided June 24, 1985.

Edna Walz, Deputy Atty. Gen., Sacramento, Cal., Marilyn B. Miles, California Indian Legal Services, Eureka, Cal., Michael R. Sherwood, Sierra Club Legal Defense Fund, San Francisco, Cal., for plaintiff-appellee.

Rodney Hamblin, Asst. U.S. Atty., San Francisco, Cal., Jacques B. Gelin, Robert Klarquist, Attys., U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Before DUNIWAY, CANBY and BEEZER, Circuit Judges.

CANBY, Circuit Judge:

These consolidated actions contest the plans of the United States Forest Service (Forest Service) to permit timber harvesting and to construct a road in the Blue Creek Unit of the Six Rivers National Forest in California. The Blue Creek Unit consists of 76,500 acres located in the Siskiyou Mountains. The Forest Service has inventoried approximately 31,500 of these acres as a roadless area.[1] On its northern boundary, the Blue Creek Unit adjoins the Eightmile and Siskiyou inventoried roadless areas. Blue Creek, the stream after which the Unit was named, flows into the Klamath River and contains important spawning habitat for several anadromous fish species. *Northwest Indian Cemetery Protective Ass'n v. Peterson*, 565 F.Supp. 586, 590 (N.D.Cal.1983).

Contained within the Blue Creek Unit is a segment of land known as the "high country," which is considered sacred by Yurok, Karok, and Tolowa Indians who live in the surrounding region. Although the Indians use specific sites within the Blue Creek Unit for prayer and religious uses, the sacred area encompasses an entire region. *Id.* at 591.

In 1972, the Forest Service began to prepare a multiple-use management plan and

---

1. A "roadless area" is defined as "[a]n area of undeveloped Federal land within which there are not improved roads maintained for travel by means of motorized vehicles intended for highway use." FSM § 8260(B)(3)(a)(1).

environmental impact statement (EIS) for the management of the Blue Creek and Eightmile Planning Units within the Six Rivers National Forest. In 1974 and 1975, the Forest Service circulated a draft, supplemental draft and final EIS which proposed various land use management plans for the Blue Creek Unit. In 1981, the "Blue Creek Unit Implementation Plan" (Management Plan) proposed to permit harvesting of 733 million board feet of Douglas fir from the Blue Creek Unit over an 80 year period.

In 1977, the Forest Service issued another draft EIS that proposed various alternative routes to complete construction of the last 6.02 miles (Chimney Rock Section) of a paved road from Gasquet, California to Orleans, California (G–O Road). In 1982, the final EIS was issued for the proposed construction of the Chimney Rock Section through the Blue Creek Unit.

Plaintiffs objected to both proposed projects and, after exhausting administrative remedies, filed these actions in the district court. *Northwest Indian Cemetery Protective Association, et al. v. Peterson* was brought by the Northwest Indian Cemetery Protective Association (seven non-profit corporations and unincorporated associations), four individual plaintiffs of American Indian heritage, and two Sierra Club members. *State of California v. Block* was brought by the State of California acting through its Native American Heritage Commission. The complaints alleged that the Forest Service decisions to construct the Chimney Rock Section of road and to timber the Blue Creek Unit violated: (1) the first amendment of the United States Constitution; (2) the American Indian Freedom of Religion Act of 1978 (AIFRA), 42 U.S.C. § 1996; (3) the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, and the Wilderness Act, 16 U.S.C. § 1131 *et seq.;* (4) the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1251 *et seq.;* (5) water and

fishing rights reserved to American Indians on the Hoopa Valley Indian Reservation, and defendants' trust responsibility to protect those rights; (6) the Administrative Procedure Act (APA), 5 U.S.C. § 706; (7) the Multiple-Use Sustained-Yield Act, 16 U.S.C. §§ 528–531; and (8) the National Forest Management Act of 1976, 16 U.S.C. § 1600 *et seq.*

Prior to trial, the district court denied plaintiffs' motion for a preliminary injunction on the understanding that no road construction would begin prior to a ruling on the merits. *Northwest Indian Cemetery Protective Ass'n v. Peterson,* 552 F.Supp. 951 (N.D.Cal.1982). After a full trial on the merits, the district court found that the challenged Forest Service decisions violated: (1) the first amendment; (2) NEPA and the Wilderness Act; (3) FWPCA; (4) Indian water and fishing rights on the Hoopa Valley Indian Reservation, and defendants' trust responsibility to protect those rights; and (5) the Administrative Procedure Act. *Northwest Indian Cemetery Protective Ass'n v. Peterson,* 565 F.Supp. 586, 591 (N.D.Cal.1983). The district court accordingly issued an injunction: (1) preventing construction of the G–O road and any timber harvesting or construction of logging roads in the high country; (2) preventing timber harvesting or construction of logging roads in the Blue Creek Roadless Area until an EIS was prepared evaluating its wilderness potential as part of adjoining roadless areas; and (3) enjoining timber harvesting and construction of logging roads anywhere in the Blue Creek Unit until an EIS was prepared specifying adequate measures to mitigate the impact of those activities on water quality and fish habitat in Blue Creek, and until studies were completed demonstrating that the proposed logging activities would not violate the FWPCA or reduce the supply of anadromous fish to the Hoopa Valley Indian Reservation. The government appeals.

## ISSUES

On this appeal we address the following issues raised by the Forest Service:[2]

(1) Whether the district court erred in enjoining road construction and timbering in the high country of the Blue Creek Unit on the ground that such activity would impermissibly burden the Indian plaintiffs' first amendment right to the free exercise of their religion;

(2) Whether the district court erred in holding that the EISs prepared for the road and land management plans failed adequately to discuss the effects on water quality of the proposed actions;

(3) Whether the district court erred in holding that the Forest Service's proposed actions would violate the Federal Water Pollution Control Act and state water quality standards.

## DISCUSSION

### I. First Amendment

█ The first amendment prohibits governmental actions that burden an individual's free exercise of religion unless those actions are necessary to fulfill a governmental interest of the highest order that cannot be met in a less restrictive manner. *See Wisconsin v. Yoder*, 406 U.S. 205, 214–15, 92 S.Ct. 1526, 1532–33, 32 L.Ed.2d 15 (1972); *Sherbert v. Verner*, 374 U.S. 398, 403–09, 83 S.Ct. 1790, 1793–96, 10 L.Ed.2d 965 (1963). In this case the government challenges the district court's conclusion that certain proposed Forest Service management decisions, if implemented, would impermissibly burden the Indian plaintiffs' free exercise rights. Further, the government contends that even if its actions would impose such a burden, it has demonstrated a compelling governmental interest, not capable of being met in a less restrictive manner, sufficient to override the Indians' religious interests.

### A. Free Exercise Rights

█ To establish a constitutionally valid free exercise claim, Indian plaintiffs have the initial burden of proof to demonstrate that governmental actions create a burden on their rights. *See School District of Abington Township*, 374 U.S. 203, 223, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844 (1963); *Wilson v. Block*, 708 F.2d 735, 740 (D.C.Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 371, 78 L.Ed.2d 330 (1983). That the Indians use the Blue Creek high country area for religious purposes and consider the area sacred is not enough to characterize the contemplated Forest Service actions as a burden on free exercise rights. The Indians have to show that the area at issue is indispensable and central to their religious practices and beliefs and that the proposed governmental actions would seriously interfere with or impair those religious practices. *Id.* at 742–44; *Sequoyah v. TVA*, 620 F.2d 1159, 1164 (6th Cir.), *cert. denied*, 449 U.S. 953, 101 S.Ct. 357, 66 L.Ed.2d 216 (1980); *Crow v. Gullet*, 541 F.Supp. 785, 792 (D.S.D.1982), *aff'd*, 706 F.2d 856 (8th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 413, 78 L.Ed.2d 351 (1983).

The district court here found that

[f]or generations, individual members, spiritual leaders, and medicine persons of the Yurok, Karok, and Tolowa tribes have traveled to the high country to communicate with the "great creator," to perform rituals, and to prepare for specific religious and medicinal ceremonies. Such use of the high country is "central and indispensable" to the Indian plaintiffs' religion....

Communication with the "great creator" is possible in the high country because of the pristine environment and opportunity for solitude found there. Construction of the Chimney Rock Section and/or the harvesting of timber in the high country, including "clear-cutting," would seriously damage the salient visual, aural, and environmental qualities of the high country. The Forest Service's own study concluded that "[i]ntrusions on the sanctity of the Blue

---

**2.** In view of our disposition of this appeal, we do not find it necessary to address the issues raised by plaintiffs-appellees.

Creek high country are ... potentially destructive of the very core of Northwest [Indian] religious beliefs and practices." [3]

565 F.Supp. at 594–95 (citations omitted). This finding is sufficient to support the district court's conclusion that the proposed operations would interfere with the Indian plaintiffs' free exercise rights. The government disputes the finding, but our review of the record convinces us that it is not clearly erroneous.

■ We also reject the government's argument that the free exercise clause cannot be violated unless the governmental activity in question penalizes religious beliefs or practices. Governmental action that makes exercise of first amendment rights more difficult or impedes religious observances may also be " 'invalid even though the burden may be characterized as being only indirect.' " *Sherbert v. Verner*, 374 U.S. at 404, 83 S.Ct. at 1794 (quoting *Braunfeld v. Brown*, 366 U.S. 599, 607, 81 S.Ct. 1144, 1148, 6 L.Ed.2d 563 (1961) (plurality opinion)).

**B.** *Establishment Clause*

■ The government does not challenge the sincerity of the Indians' beliefs nor their religious character. It even concedes that the Indians' use of the high country for religious purposes is entitled to some first amendment protection. *Northwest Indian Cemetery Protection Ass'n v. Peterson*, 565 F.Supp. at 594. Indeed, the Forest Service plans to erect buffer zones to protect eleven sites with identified historical and ritual use. It argues that any greater protection of the area requires the government, in effect, to manage and maintain the area as a religious preserve for a single group in a violation of the establishment clause.

The government substantially overstates its case and argues far beyond the reach of the district court's injunction. The district court's order permanently enjoins the Forest Service only from engaging in commercial timber harvesting and from constructing any logging roads in the high country pursuant to any land management plan. 565 F.Supp. at 606. The Forest Service remains free to administer the high country for all other designated purposes including outdoor recreation, range, watershed, wildlife and fish habitat, and wilderness. *See* Multiple-Use Sustained-Yield Act, 16 U.S.C. § 528; National Forest Management Act, 16 U.S.C. § 1604(e)(1). The Forest Service would not, by virtue of this injunction, sponsor or become entangled in religious matters in violation of the establishment clause.

■ Moreover, managing the National Forest so as not to burden genuine Indian religious beliefs and practices is not an endorsement or advancement of that religion but evidences a policy of neutrality. *See Walz v. Tax Comm'n*, 397 U.S. 664, 669, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970). The Constitution encourages accommodation, not merely tolerance, of all religions and forbids hostility toward any. *See Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 1359, 79 L.Ed.2d 604 (1984). "[W]here governmental action violates the Free Exercise Clause, the Establishment Clause ordinarily does not bar judicial relief." *Wilson v. Block*, 708 F.2d at 747.

**C.** *Compelling Government Interest*

■ The district court ruled that the interests of the Forest Service in road construction and timber harvesting either would not be served by the proposed projects or "fall far short of constituting the 'paramount interests' necessary to justify infringement of plaintiffs' freedom of religion." 565 F.Supp. at 596. The government contends that the district court erred in not deferring to the judgment of the Secretary as to the proper purposes and management of the National Forest in

---

**3.** This finding distinguishes this case from *Wilson v. Block*, 708 F.2d 735 (D.C.Cir.1983), where tribal free exercise objections to development of the San Francisco Peaks in Arizona were rejected because the plaintiffs failed to show that the development would burden them in their religious beliefs or practices. *Id.* at 745.

light of the generality of congressional direction over the uses of the Forests. The issue before us, however, is not whether the Secretary violated statutory directives, but whether the Secretary violated the first amendment. The district court's findings of fact with regard to the absence of a compelling governmental interest are not clearly erroneous.[4]

## II. *Adequacy of the Environmental Impact Statements*

### A. *Standard of Review*

■■■■ The district court's review of an EIS is governed by the Administrative Procedure Act, 5 U.S.C. § 706(2)(D); agency action may be set aside if it was undertaken without observance of procedures required by law. *Lathan v. Brinegar,* 506 F.2d 677, 693 (9th Cir.1974) (en banc). Courts are not to "fly speck" EISs, *id.,* but an EIS should not be upheld if it does not " 'reasonably [set] forth sufficient information to enable the decisionmaker to consider the environmental factors and make a reasoned decision.' " *Adler v. Lewis,* 675 F.2d 1085, 1096 (9th Cir.1982) (citations omitted).

■■■■ We review the district court's conclusion to determine whether it is based upon an erroneous legal standard or upon clearly erroneous findings of fact. *Save Lake Washington v. Frank,* 641 F.2d 1330, 1334 (9th Cir.1981).

### B. *Project Effects on Water Quality*

The district court found that the Chimney Rock draft and final EISs were inadequate because: (1) they failed sufficiently to disclose the impact of the road construction on water quality; (2) they failed to discuss the cumulative impact of the road construction and implementation of the Management Plan on water quality; and (3) they failed adequately to describe what measures would be taken to mitigate adverse impacts on water quality. In addition, the district court found that the draft, supplemental draft, and final EISs prepared for the Blue Creek Management Plan inadequately described measures to mitigate adverse impacts on water quality in Blue Creek.

The government does not take issue with the legal standards applied to the EISs by the district court. Rather, it contends that the Chimney Rock draft and final EISs do address erosion and sedimentation problems relative to road construction. It also argues that cumulative sedimentation effects on water quality and fishlife are disclosed in the 1975 Blue Creek EIS for both the Chimney Rock Section and the proposed Management Plan and that it was unnecessary to readdress them in the Chimney Rock EISs. Further, it claims that the EISs do identify specific mitigation measures.

### 1. *Impact of Road Construction on Water Quality*

■■■ The draft and final EISs prepared for the Chimney Rock Section do address erosion and sedimentation effects of road construction on Blue Creek. The EISs state that total increased sedimentation would raise the sedimentation yield in Blue Creek by 5.5 percent, resulting in only a "small decrease" in water quality. The EISs do not, however, address increased sedimentation contributed by road-caused landslides, because of the difficulty inherent in predicting such slope failures. Thus, the potential risks to water quality stemming from the uncertainty in predicting landslides are ignored in the discussion of sedimentation effects. These risks must be revealed if they appear substantial. *See State of Alaska v. Andrus,* 580 F.2d 465, 473 (D.C.Cir.), *vacated in part,* 439 U.S. 922, 99 S.Ct. 303, 58 L.Ed.2d 315 (1978).

■■■ The district court found that landslide risks were substantial and that debris

---

**4.** We find no merit in the government's claim that the district court set the boundaries of the high country area to encompass an area greater than that established by plaintiffs at trial. Our review of the record reveals that the evidence fully supports the designation of boundaries in the district court's injunction.

from landslides triggered by the road construction would result in as much as a 500% increase in sediment loads in Blue Creek. These findings are not clearly erroneous. The failure to disclose such risks in the EISs renders them inadequate.

### 2. *Cumulative Sedimentation Effects on Water Quality*

■ The district court was correct in finding that the Chimney Rock EISs do not address cumulative sedimentation effects on water quality arising from the proposed road and timber projects. Nor did the district court ignore the 1975 Blue Creek EIS, which the government contends does address cumulative effects.

The Blue Creek EIS does not adequately discuss cumulative effects because there the effects were judged as "average" increases in sediment over a period of years. State water quality standards, however, pertain to individual amounts of turbidity at a particular time and are not written in terms of averages over years. The discussion of cumulative effects in the Blue Creek EIS is therefore inadequate and likely underestimates the actual cumulative effects of both projects on water quality.

The district court's finding that the EISs do not contain an adequate discussion of the cumulative effects of both projects on water quality is consequently not clearly erroneous.

### 3. *Mitigation Measures*

■ The applicable regulations require that an EIS discuss "[m]eans to mitigate adverse environmental impacts" of the proposed action. 40 C.F.R. § 1502.-16(h). The Chimney Rock and Blue Creek EISs discuss mitigation measures in part, but neither EIS analyzes the mitigation measures in detail or explains how effective the measures would be. A mere listing of mitigation measures is insufficient to qualify as the reasoned discussion required by NEPA. *See Adler v. Lewis*, 675 F.2d at 1096. The district court's conclusion that the EISs are inadequate for this reason is sound.

### III. FWPCA

The Federal Water Pollution Control Act requires each state to implement its own water quality standards with which federal agencies must comply. *See* 33 U.S.C. §§ 1313, 1323. The North Coast Regional Water Quality Control Board in California determines water quality standards for the Blue Creek area. *See* Water Quality Control Plan for Klamath River Basin 1–A (208 Plan). This 208 Plan provides that "[t]urbidity shall not be increased more than 20 percent above naturally occurring background levels." *Id.* at 5–13. Further, it provides that "[t]he suspended sediment load and suspended discharge rate of surface waters shall not be altered in such a manner as to cause nuisance or adversely affect beneficial uses." *Id.* The government challenges the district court's ruling that implementation of the Management Plan and construction of the Chimney Rock Section would violate FWPCA because either activity would increase turbidity and suspended sediment levels above the 20 percent ceiling level established by the 208 Plan.

The government first argues that the standards established in the 208 Plan are no longer applicable to the Forest Service. It contends that these standards were superseded by California's and EPA's acceptance of Forest Service Best Management Practices (BMPs). The government claims that these BMPs are the applicable water quality standards for the Forest Service.

■ The BMPs, however, are merely a means to achieve the appropriate state 208 Plan water quality standards. There is no indication in the 208 Plan or in the agreements between the Forest Service and the Water Quality Control Board that the BMPs were to be considered standards in and of themselves. Adherence to the BMPs does not automatically assure compliance. In fact, the federal statute contemplates that any activity conducted pursuant to a BMP can be terminated or modified if a change in that activity requires a

stricter BMP. *See* 33 U.S.C. § 1288(b)(4)-(B)(iv)(II). Of course, a stricter BMP would be required if, as here, the conducted activity resulted in a violation of state water quality standards.

The government's second argument is that even if the state 208 Plan standards are applicable, FWPCA requires only that state plans include "procedures and methods ... to control [silviculturally related nonpoint source pollution] to the extent feasible." *See* 33 U.S.C. § 1288(b)(2)(F)(ii). It claims that the BMPs ensure that the contemplated activities will be conducted in a manner which will prevent pollution to the extent feasible. It argues that so long as the BMPs are utilized, there is no violation of the state water quality standards.

■ This argument is a but a variation of the one before, and fails for the same reasons. Adherence to the BMPs does not automatically ensure that the applicable state standards are being met. The district court found that the state standards would be violated if the Forest Service projects were implemented as described in the EISs. This finding is not clearly erroneous.[5]

## IV. *Wilderness Evaluation*

This appeal originally presented one issue in addition to those already discussed: whether the district court erred in holding that NEPA and the Wilderness Act required the Forest Service to evaluate the impact of the proposed actions on the wilderness potential of the Blue Creek Unit considered together with the Eightmile and Siskiyou Planning Units.

The parties are in agreement that this issue has been rendered moot by the enactment of the California Wilderness Act of 1984, P.L. 98–425, which was signed by the President on September 28, 1984. The Act places in wilderness about 19,000 acres of the Eightmile Creek Area and 26,000 acres of the Blue Creek Area.

Accordingly, we must vacate that portion of the district court's injunction that precludes timber harvesting or the construction of logging roads until the Forest Service prepares an EIS evaluating the wilderness potential of the Blue Creek Area together with the Eightmile and Siskiyou Roadless Areas.

## V. *Conclusion*

We vacate those portions of the district court's order that enjoin defendants from harvesting timber or constructing logging roads until they have (1) prepared an EIS evaluating the wilderness potential of the Blue Creek Area together with the Eightmile and Siskiyou Roadless Areas; and (2) completed studies demonstrating the proposed logging activities would not reduce the supply of anadromous fish in those portions of the Klamath River that flow through the Hoopa Valley Indian Reservation.

In all other respects the decree of the district court is affirmed.[6]

---

5. The district court found that the adverse impact of either project on water quality and fish habitat in Blue Creek would significantly decrease the quantity of anadromous fish present in those portions of the Klamath River that flow through the Hoopa Valley Indian Reservation. 565 F.Supp. at 605. The court held that the government's countenance of this adverse impact would constitute a breach of its trust responsibility toward those Indians.

Because the Hoopa Valley Tribe was not a party to this action, we do not find this case to be an appropriate vehicle in which to determine the range and extent of the trust responsibility owed to the Tribe. We therefore vacate that part of the district court's injunction that requires defendants to complete studies demonstrating that the proposed logging activities would not reduce the supply of anadromous fish present in those portions of the Klamath River that flow through the Hoopa Valley Indian Reservation. In so doing, we note that the district court clearly viewed the deterioration of water quality in violation of FWPCA as the primary threat to the fish. The surviving portions of the district court's injunction preclude the defendants from logging until they complete and distribute studies demonstrating that such activities will not violate water quality standards of FWPCA.

6. Appellants' Motion to Supplement the Record on Appeal with material not presented to the district court either before or after the court rendered its opinion is DENIED.

AFFIRMED IN PART AND VACATED IN PART.